No. 20,732.

JAMES STEVENSON et al., *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellant*.

SYLLABUS BY THE COURT.

1. INJUNCTION — *Road Tax — Parties Plaintiff — Taxpayers — Statute.* Property owners and taxpayers affected by any tax levied under the provisions of chapter 201 of the Laws of 1909 may prosecute an action to enjoin the board of county commissioners from constructing and improving a road under that chapter.

2. HIGHWAYS—*Improvement—Petition—Sufficiency—Finding of County Commissioners Conclusive—Bona Fides.* In the absence of fraud, corruption or other misconduct the substantial equivalent of fraud, the finding of the board of county commissioners on the sufficiency of a petition under chapter 201 of the Laws of 1909 is final and conclusive on the property owners and taxpayers affected by any improvement ordered under that petition.

3. SAME—*Signatures to Petition.* This rule applies to the legality and authenticity of the signatures to the petition.

4. SAME—*Boundaries of District.* The same rule applies to the determination of the board of county commissioners concerning the boundaries of the district, as set forth in the petition.

5. SAME—*Cost of Improvement.* The rule likewise applies to the cost of the proposed improvement.

6. SAME—*Improvement—Statute Not Repealed by Implication—Provisions Not Inconsistent.* Chapter 200 of the Laws of 1909 does not repeal chapter 201 of the Laws of 1909, or any part thereof, by implication. The two chapters provide separate and distinct methods of im-

proving roads, and both may be resorted to in any county at the same time for the improvement of different roads.

7. CONSTITUTIONAL LAW — *Highways* — *Improvement* — *Statute Valid.* Chapter 201 of the Laws of 1909 is not unconstitutional for any of the following reasons: (*a*) That the provisions of the constitution were not observed in the passage of the act. (*b*) That the act imposes on the township a tax without giving the township any voice, hearing or representation with respect to the tax. (*c*) That the act requires the township board to levy a tax in which it has no voice in creating. (*d*) That the board of county commissioners has no discretion with respect to the improvement to be ordered. (*e*) That the act confers legislative powers on the petitioners.

8. SAME. Chapter 201 of the Laws of 1909 is not unconstitutional for the reason that it makes no provision for notice to landowners of the proceedings for the contemplated improvement of a road.

9. INJUNCTION—*Highways—Improvement—Petition States Cause of Action.* In an action to enjoin a board of county commissioners from improving a road, under chapter 201 of the Laws of 1909, a cause of action is stated in a petition which alleges that the petition to the board of county commissioners did not have the requisite number of signatures, that it was signed by persons not *bona fide* owners of property in the designated district, and that the commissioners made no investigation of the sufficiency of the petition, but without evidence of its legality and its sufficiency and in disregard of their official obligation and duty, arbitrarily ordered the improvement of the road.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed July 8, 1916. Affirmed.

*W. E. Atchison,* county attorney, for the appellant; *W. P. Montgomery,* and *James P. Coleman,* both of Topeka, of counsel.

*James A. Troutman,* of Topeka, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is an appeal from an order overruling a demurrer to the following petition:

"Said plaintiffs allege that they are residents, property owners and tax-payers in Topeka and Mission township, Shawnee county, Kansas; that this action is one of common and general interest to the tax-payers of said townships and they bring this suit for themselves and for and on behalf of said tax-payers, generally, as well as for those residing within the benefit district referred to in the next paragraph.

Stevenson v. Shawnee County.

"II. That September 22, 1915, a petition to the board of county commissioners of said county was filed with the county clerk, asking for the improvement of the Tenth Street Road, commencing at Washburn avenue, and running west to the west line of Section 34, Township 11, Range 16, one mile of said road being within the limits of said Topeka township; that the petition prayed for the improvement of said highway by the use of crushed stone or macadam, with a top surface of Burmudez asphalt, or other asphalt, equally good, eighteen feet wide, to be paid for in ten annual installments; that the prayer of said petition was granted by the defendant, September 27, 1915, and the improvement of said road ordered.

"III. That the petition for the improvement of said highway is not in compliance with the law, and is defective and insufficient in several respects, to-wit:

"(a) That it does not contain the requisite number of signatures of land owners, as required by section 1, chapter 201 of the Laws of 1909, which is designated in said petition as the law under which it is proposed to make such improvement.

"(b) That said petition was signed by certain persons who were not at the time bona fide owners within the designated district.

"(c) That J. E. House, as Mayor of the city of Topeka, signed said petition, under purported authority of said city; that said act was unauthorized, illegal and void.

"(d) That certain individuals assumed to sign said petition for and on behalf of the owners of a tract of land known as the Catholic Cemetery; that they had no legal authority to sign said petition.

"(e) That some of the signatures to said petition were obtained by false and fraudulent representations.

"IV. That the limitations of the district, as described in said petition, are irregular, illogical and unjust, and not of the Laws of 1909; that certain tracts of land whose owners were opposed to the contemplated improvement in compliance with the spirit or the letter of chapter 201 were excluded, and other tracts whose owners were favorable to the improvement were included, arbitrarily, for the sole purpose of making it appear that 60 per cent of the persons who own 50 per cent of the land within the district, were favorable to such improvement, and had signed the petition.

"V. That the cost of the proposed improvement is excessive, and out of proportion to any benefit that can accrue to the adjoining lands; that in many cases the annual tax to pay for such improvement will exceed the revenue derived from the land, and would amount to practical confiscation of the property.

"VI. That chapter 201 of the Laws of 1909 is unconstitutional and void for these reasons:

"(a) That the mandatory provisions of the constitution of the state of Kansas were not observed in its passage by the legislature.

43—98 KAN.

"(b) That it imposes upon the township through which said road is projected, a portion of the cost of its construction, without giving the township any voice, hearing or representation with respect to the same.

"(c) That it requires the township board to levy taxes in compliance with an order of the board of county commissioners for a debt which it had no voice in creating, thus depriving an independent municipal corporation of its power to levy and collect taxes of its own volition, and to control its own affairs.

"(d) That the board of county commissioners has no discretion with respect to such improvement, but must order the construction of the road in accordance with the petition presented.

"(e) That said chapter confers upon the petitioners legislative power.

"(f) That said chapter 201 was repealed by chapter 200 of the Laws of 1909.

"VII. That the defendant commissioners made no investigation of the sufficiency of said petition, took no evidence of the ownership of the real property within the designated district, made no examination of the records of real-estate titles in the office of the register of deeds of Shawnee county to determine the right of the petitioners to sign such a petition; but without evidence of the legality and sufficiency of the petition and in disregard of their official obligation and duty, arbitrarily, approved the petition and ordered the improvement of the road as therein described.

"VIII. That chapter 201 of the Laws of 1909, and the amendments thereto, make no provision for notice of the proceedings for the contemplated improvement of any highway, to the land owners within the designated benefit district, or to the taxpayers of the township through which the road runs; and no notice of any kind, actual or constructive, was served upon, or given to, these plaintiffs, to the taxpayers of Topeka and Mission townships, or the owners of land abutting the road described in the petition.

"IX. That the Tenth Street Road is only one of some twelve or fifteen important highways entering the city of Topeka, through said township, the improvement of each of which is equally important; that the improvement will impose upon the taxpayers of said township an unjust, excessive and oppressive burden for which no compensatory benefit would be derived, and would lead, to a demand for the same kind of improvement upon all the important roads entering the city.

"X. That the construction of said road, in accordance with the action already taken by the defendants, would cause irreparable injury to said plaintiffs for which there is no adequate remedy at law; that the defendants threaten, and are, in fact, proceeding to carry out their plans for the improvement of said highway, regardless of the wishes and in derogation of the rights of the residents and taxpayers of said township, and will do so unless restrained by order of this court.

"Wherefore, The plaintiffs pray that the said defendant be per-

manently enjoined from carrying out the order for the construction of said improvement, or from taking any further action, under said petition, and for such other relief as may be just and equitable."

1. The defendants argue that the plaintiffs can not sue for the reason that they have not sustained any damage other than that sustained by the public in general. *Comm'rs of Barber Co. v. Smith,* 48 Kan. 331, 29 Pac. 559, and kindred cases are cited in support of this argument. In response to this the plaintiffs cite section 265 of the code of civil procedure, which in part reads:

"An injunction may be granted to enjoin . . . any public officer, board or body from . . . doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge or assessment; and any number of persons whose property is or may be affected by a tax or assessment so levied . . . may unite in the petition filed to obtain such injunction."

The act of the board of county commissioners will result in the levy of an assessment on the lands of the plaintiffs. If the act of the board is illegal it may be enjoined by any number of persons whose property may be affected by the assessment. This section of the code as it now appears was enacted in 1905. (Laws 1905, ch. 334.) Previous to that it read:

"An injunction may be granted to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction." (Civ. Code, § 253, Gen. Stat. 1901, § 4700.)

Previous to the passage of the act of 1905 parties situated as the plaintiffs are were compelled to wait until the levy or collection of the tax or assessment was attempted before they could maintain an action. In *Gas Co. v. Railway Co.,* 74 Kan. 661, 87 Pac. 883, this court said:

"The difference between the act amended and the amendment is that the latter gives to the person seeking relief a right of action earlier in the tax proceedings, and also gives to such person a right to have an injunction against any public officer, board or body to restrain them from entering into contracts which would result in imposing upon his property an illegal tax. The plaintiff might have waited until an attempt was made to sell its property for the nonpayment of the taxes levied to pay this bonded indebtedness, but it was not compelled to do so. The statute gives the right of action at the inception of any attempt to create such illegal burden." (p. 665.)

Under the law as it now exists the plaintiffs had legal capacity to sue and prosecute this action at the time it was commenced. (*Pollock v. Kansas City,* 87 Kan. 205, 123 Pac. 985; *Hartzler v. City of Goodland,* 97 Kan. 129, 154 Pac. 265; *Arnhold v. Klug,* 97 Kan. 576, 579, 155 Pac. 805.)

2. On the part of the defendants it is contended that the finding of the board of county commissioners on the sufficiency of the petition is conclusive, and *The State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 684, is cited. In response to this the plaintiffs point out the difference between the petition in the Holcomb case and the petition in this case. In that case the state by proceedings in quo warranto questioned the validity of the incorporation of the city of Zenda. The petition in that case alleged:

"That the petition presented to the board of county commissioners was not. signed by a majority of the electors of the unincorporated town and that the number of inhabitants was less than two hundred." (p. 662.)

The board of county commissioners acted on the petition presented to them. The court said:

"The act providing for the incorporation of cities of the third class (Gen. Stat. 1909, § 1511) confers authority on the board of county commissioners to determine whether or not a petition for incorporation presented to it is signed by a majority of the electors of the unincorporated town. The authority thus conferred is jurisdiction, which attaches when a petition fair on its face and duly published is filed. Proceedings following resulting in an order effecting incorporation are the exercise of jurisdiction. The legislature' having authorized no appeal or other method of review, the action of the board of county commissioners is final and conclusive although irregular and erroneous, and can not be attacked by the state in an action of quo warranto prosecuted against the corporation except for fraud, collusion or other misconduct the substantial equivalent of fraud." (Syl. ¶ 1.)

If the state can not successfully question the action of the board of county commissioners in the incorporation of a city it follows that a property owner and taxpayer can not question the action of the board in ordering an improvement under chapter 201 of the Laws of 1909. In the absence of fraud, corruption, or other misconduct the substantial equivalent of fraud, the findings of the board of county commissioners are conclusive on the courts. (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Williams v. City of Topeka,* 85 Kan. 857, 118 Pac. 864; *Spaulding v. Homestead, etc., Ass'n,* 87 Cal. 40, 24

Pac. 600; *Kirchman v. West & South Towns St. Ry. Co.*, 58 Ill. App. 515; *McEneney et al. v. The Town of Sullivan*, 125 Ind. 407, 25 N. E. 540; 28 Cyc. 1022.)

3. The plaintiffs maintain that the signing of the petition by J. E. House, as mayor of the city of Topeka, was unauthorized, illegal and void, and that the individuals who signed for the Catholic cemetery had no legal authority. Whether or not the petition was properly signed was one of the questions to be determined by the board of county commissioners. Their conclusion as to this matter is a part of their finding on the sufficiency of the petition and is binding on all parties. The city of Topeka has power to sue and be sued and to hold real property for the use of the city. (Gen. Stat. 1909, § 866.) It has power to protect that property by whatever legal means may be necessary. It can do the same things with reference to its real property that any other property owner can do. The petition to the board of county commissioners was drawn under section 1 of chapter 201 of the Laws of 1909, which section in part reads:

"Wherever sixty per cent of the landowners along the lines of any regularly laid out road, who shall own at least fifty per cent of the land to be taxed, within such distance as shall be stated in the petition . . . shall petition the board of county commissioners of the county in which such road is located for the improvement of such road, or any part thereof, said county commissioners shall cause said road or part of road thereof to be improved as prayed for in said petition," etc.

There is no restriction in this statute as to the legal character of the landowners. The city had authority to petition for this improvement.

What has been said concerning the city of Topeka applies with equal force to the Catholic cemetery, be that an association of individuals or a corporation.

4. Another contention of the plaintiffs is that the limitations of the district as set forth in the petition to the board of county commissioners are irregular, illogical and unjust. So far as this matter is in the control of any one outside of the petition, it is with the board of county commissioners. When they find that the improvements prayed for will be a public utility and order the improvements made, everything has been done that can be done. The determination of the board is final and conclusive except for fraud.

5. Another argument of the plaintiffs is that the cost of the proposed improvement is excessive and out of proportion to any benefit that can accrue to the adjoining land. This is a matter for the determination of the board of county commissioners.

6. The plaintiffs claim that chapter 201 of the Laws of 1909, the act under which this improvement is proposed, was repealed by implication by chapter 200 of the Laws of the same session, and argue that this result is brought about by chapter 200, the last act passed, being contradictory to and in conflict with chapter 201. Chapter 201 provides for the improvement of any regularly laid out road when sixty per cent of the landowners along the line of the road petition for its improvement. Chapter 200 provides for a system of building, improving and repairing roads and highways, other than dirt roads, throughout the county. The people of a county may or may not desire to proceed under chapter 200. The people living along the lines of a regularly laid-out road may desire to improve that road, independent of the desire of the people of the county, and may proceed under chapter 201. The two acts prescribe different systems of building roads. Either one or the other may be adopted. There is room for both to operate. Both may be resorted to in any county for the improvement of different roads at the same time. Chapter 200 does not repeal chapter 201.

7. It is argued by the plaintiffs that chapter 201 of the Laws of 1909 is unconstitutional and void for five reasons, set out as subdivisions *a, b, c, d,* and *e* of paragraph VI of their petition. This act was declared constitutional so far as it confers legislative powers on the petitioners, in *Hill v. Johnson County,* 82 Kan. 813, 109 Pac. 163. This court is unable to give any reason for declaring the act unconstitutional on any of the grounds named by the plaintiffs. Under these circumstances, following a well-established rule, this court will presume in favor of the constitutionality of the act until the contrary clearly appears.

8. The plaintiffs contend that the statute is void because it makes no provision for notice to landowners of the proceedings for the contemplated improvement of the road. In *Hill v. Johnson County, supra,* the unconstitutionality of the act

was urged on the ground that it contained no express provision for notice to the property owners before the special assessments became a tax on the property. It was there held that the act was not unconstitutional because it contained no express provision for such a notice. In 1911 the act was amended by section 3 of chapter 249 of the Laws of 1911 so as to provide that the county clerk shall mail a written or printed notice to the owner or owners of any tract of land liable to assessments for improvements thirty days or more before the disposition of the bonds issued for such improvements. This is evidently for the purpose of giving the property owner opportunity to appeal to the courts to redress his grievances. If the act was declared constitutional before this amendment it can not be said to be now unconstitutional when it provides for notice.

9. There remains another question for determination. The seventh subdivision of the plaintiffs' petition alleges "that the defendant commissioners made no investigation of the sufficiency of said petition . . . but without evidence of the legality and sufficiency of the petition and in disregard of their official obligation and duty, arbitrarily approved the petition and ordered the improvement of the road as therein described."

In addition to these allegations the petition alleges that the petition to the board of county commissioners did not have the requisite number of signatures of landowners, and that it was signed by certain persons who were not *bona fide* owners of property in the designated district. These allegations are attacked by demurrer and full force and effect must be given them. Under these circumstances, if the commissioners made no investigation of the sufficiency of the petition, but in disregard of their official obligations and duty arbitrarily ordered the improvement of the road, their acts were the substantial equivalent of fraud. The county commissioners must make an investigation of the sufficiency of the petition presented to them, and they must act under their official obligation and duty and must act on their best judgment. Because of these allegations the petition states a cause of action and the demurrer was rightly overruled. But the fact that the defendants filed a demurrer which was overruled and on which they elected to

stand should not preclude them from contesting these allegations by answer and proof.

The judgment overruling the demurrer is affirmed, but the cause is remanded with directions to the district court to permit the defendants to file an answer to these allegations if they desire to do so.

PORTER, J., and DAWSON, J., dissent from paragraph 9 of the syllabus and the corresponding portion of the opinion.