No. 43,838

CLOYDE D. McCORMICK and JESSIE McCORMICK, *Appellants,* v. MARVIN D. WILLIAMS and DONNA F. WILLIAMS, *Appellees.*

(397 P. 2d 892)

Opinion filed December 12, 1964.

*Russell Cranmer,* of Wichita, argued the cause, and *Gerald L. Michaud* and *M. William Syrios,* both of Wichita, were with him on the briefs for the appellants.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt, Philip Kasebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson* and *David W. Buxton,* all of Wichita, and *Hugo T. Wedell,* of Counsel, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from an order sustaining a demurrer to plaintiffs' evidence in an action for the wrongful death of a child based on the attractive nuisance doctrine.

No issue is presented by the pleadings, and there is no conflict in the facts as disclosed by plaintiffs' evidence.

The defendants lived at 712 South Terrace Drive, Wichita, Kansas. Their back yard was enclosed with a white picket fence about two and a half feet to three feet high. When opened, the gate into the back yard was pulled shut with a spring where it was caught by a strong latch. In the rear of the back yard was a swimming pool. The swimming pool was of the usual modern type and had a fence around it about six feet high.

At the time of the incident under consideration the gate into the swimming pool was open. There was a diving board at the east end of the pool. The water was about six feet deep and was covered with a layer of snow and rotten ice. Bushes and evergreens obscured the view to the swimming pool from the gate into the back yard and from the street or sidewalk along the back yard. The pool was visible over the fence at the south side of the house.

In May, 1960, the plaintiffs moved into a house at 745 South

Terrace Drive, Wichita, Kansas, a few houses down and across the street from the defendants.

The plaintiffs had a son, Lloyd Charles, six and a half years old. A few days before the unfortunate occurrence he came home and asked his mother if she knew that Jill had a swimming pool. His mother answered that she did but he was not to go near it. Jill was the daughter of the defendants and was in the same school room as the plaintiffs' child.

On February 8, 1961, Lloyd Charles got out of school at 3:30 o'clock p. m. He got home between 3:30 o'clock p. m. and 3:40 o'clock p. m. He ate a piece of apple pie and went outside and built a snowman in the front yard. He came back in the house and was in from 4:30 to 5:00 o'clock p. m., at which time he went back outside. He was wearing his O. D. coat with the hood, gloves, jeans and his daddy's over-shoes. His mother checked on him a little after 5:30 o'clock p. m. Later, she went out to call him in but couldn't find him.

The police were called and an extended search was made for the child. Tracks were found leading through the gate of the defendants back yard to the swimming pool, through the gate into the swimming pool and to the diving board. The ice was broken under the end of the diving board and an investigation disclosed the body of the child at the bottom of the pool.

The plaintiffs' evidence disclosed facts substantially as presented. The trial court sustained a demurrer thereto and plaintiffs have appealed.

The sole question presented for review is whether the evidence tends to establish any liability on the part of the defendants under the attractive nuisance doctrine. We are forced to conclude that it does not.

As a direct approach to the question involved, it may be suggested that this court has squarely held that a swimming pool does not belong in the same class with instrumentalities regarded as attractive nuisances, and that the question of attractive nuisance is entirely eliminated in this state from cases where the injury or death occurs at or in a modern swimming pool.

In *Gilliand v. City of Topeka*, 124 Kan. 726, 262 Pac. 493, we held as a matter of law:

"A swimming pool in a public park of a city, constructed of concrete and equipped with the usual swimming-pool accessories, is not a nuisance, although attractive to children." (Syl.)

Again in *Swan v. Riverside Bathing Beach Co.*, 132 Kan. 61, 294 Pac. 902, we repeated:

"The rule announced and stated in *Gorman v. City of Rosedale*, 118 Kan. 20, 234 Pac. 53, and *Gilliland v. City of Topeka*, 124 Kan. 726, 262 Pac. 493, followed to the effect that a swimming pool constructed and equipped in the usual modern manner is not a nuisance, although attractive to children." (Syl. 1.)

The rule applicable to swimming pools is no doubt influenced by the general rule that liability under the attractive nuisance doctrine must be based upon latent, not patent, dangers. (*McGaughey v. Haines*, 189 Kan. 453, 458, 370 P. 2d 120.)

The rule is stated in 65 C. J. S., Negligence, § 29 (3), p. 461, as follows:

"It has been considered that the attractive nuisance doctrine applies only where the danger is latent, and not when it is patent, for the reason that the inefficiency of children who are so little advanced as to be unable to recognize patent dangers should not be allowed to shift the care of them from their parents to strangers or to impose on the owners of property a duty and liability where otherwise none would exist. . . ."

The inherent danger from a pool of water is quite patent. The danger is in no way hidden or difficult to understand.

Although liability under the attractive nuisance theory must to a great extent be governed by the facts and circumstances of each particular case, there are certain recognized elements which serve as a guide. In this case many of the elements are lacking which are essential before the attractive nuisance doctrine is applicable.

Before the doctrine of attractive nuisance applies it must be shown that the owner knew or should have known that little children frequented the premises where the attractive instrumentality was located. (*C. K. & W. Rld. Co. v. Bockoven*, 53 Kan. 279, 36 Pac. 322.) In *Biggs v. Wire Co.*, 60 Kan. 217, 56 Pac. 4, it was held in the first paragraph of the syllabus:

"The maintenance of dangerous machinery on private grounds, unprotected from the visits of trespassing children, renders the owner thereof, who has knowledge that children and others are accustomed to frequent said grounds and climb upon the structures supporting said dangerous appliances, liable in damages to the next-of-kin of a boy fourteen years of age who was caught in said exposed machinery and killed."

In *Moseley v. City of Kansas City*, 170 Kan. 585, 228 P. 2d 699, we stated at page 591 of the opinion:

". . . The condition or appliance must be something unusual and which is of a nature rendering it peculiarly or unusually attractive or alluring to

children. The object must be one and so situated that the owner knew, or should have known, it was attractive to children of tender years. In this case plaintiffs do not allege that the defendants knew or *should* have known children had played about the pole in question and that it was attractive and dangerous to children. What they do allege is that defendants *could* have known those facts. That is insufficient. The word 'should' denotes duty. The word 'could' denotes no more than a possibility."

There is no evidence that any child, including Lloyd Charles, had ever before entered the back yard enclosure. Any inference of knowledge was refuted by the nature of the back yard fence which enclosed the premises. (*C. K. & W. Rld. Co. v. Bockoven*, supra.)

It is necessary that the instrumentality alleged to be an attractive nuisance should have been so situated as to entice the child onto the premises before liability could be imposed. It is not sufficient that it attract him after he had already become a trespasser. It was established by the evidence in this case that the swimming pool could not be seen from the street or sidewalk where the gate to the back yard was located.

Unfortunate as the accident to the child may be, a case must not be determined on sympathy rather than sound principles of law. A higher degree of care for the protection of a trespassing child should not be imposed on a property owner than is expected of a parent or custodian. Rules should not be adopted which, if carried to their logical conclusion, would make a property owner an insurer of a trespassing child against all injury. Such rules would make the ownership of property and modern conveniences well-nigh intolerable.

The judgment is affirmed.

APPROVED BY THE COURT.